UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SURVIVORS NETWORK OF THOSE ABUSED BY PRIESTS, INC.; DAVID BIERSMITH; HOLLY HESEMANN; AND CALL TO ACTION, INC.; | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:12CV1501 ERW |
| JENNIFER M. JOYCE, solely in her official capacity as the Circuit Attorney for the City of St. Louis, Missouri; DANIEL ISOM, solely in his official capacity as the Chief of Police for the Metropolitan Police Department for City of St. Louis, Missouri; CHRIS KOSTER, solely in his official capacity as the Attorney General of the State of Missouri; and RONALD K. REPLOGLE, solely in his official capacity as Superintendent of the Missouri Highway Patrol; | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs Survivors Network of Those Abused by Priests, Inc.'s ("SNAP"), David Biersmith's, Holly Hesemann's, and Call to Action, Inc's ("Call to Action") Motion for Preliminary Injunction [ECF No. 5].  Plaintiffs request that this Court enjoin enforcement of recently enacted Missouri Revised Statutes §574.0135, until further order of this Court.  Plaintiffs also have filed an Amended Complaint [ECF No. 21], seeking declaratory judgment and injunctive relief, pursuant to 42 U.S.C. § 1983, in an action challenging provisions of § 574.035.

A hearing[1] on Plaintiffs' Motion was held in this Court on September 11, 2012.  For the reasons that follow, the Court will deny Plaintiffs' request for preliminary injunctive relief.

## I.      MISSOURI REVISED STATUTES § 574.035

The challenged statute, Missouri Revised Statutes § 574.035, "House of worship protection act -- disrupting a house of worship, violation, penalty," became effective on August 28, 2012, and provides:

1.      This section shall be known and may be cited as the "House of Worship Protection Act".

2.      For purposes of this section, "house of worship" means any church, synagogue, mosque, other building or structure, or public or private place used for religious worship, religious instruction, or other religious purpose.

3.      A person commits the crime of disrupting a house of worship if such person:

(1)      Intentionally and unreasonably disturbs, interrupts, or disquiets any house of worship by using profane discourse, rude or indecent behavior, or making noise either within the house of worship or so near it as to disturb the order and solemnity of the worship services; or

(2)      Intentionally injures, intimidates, or interferes with or attempts to injure, intimidate, or interfere with any person lawfully exercising the right of religious freedom in or outside of a house of worship or seeking access to a house of worship, whether by force, threat, or physical obstruction.

4.      Disrupting a house of worship is a class B misdemeanor.  Any second offense is a class A misdemeanor.  Any third or subsequent offense is a class D felony.

Plaintiffs assert that the "House of Worship Protection Act," is unconstitutional under the free speech provisions of the First Amendment and the due process clause of the Fourteenth

---

[1]The Court would like to commend counsel representing Plaintiffs and Defendants in this matter for the professional demeanor and commendable civility they displayed before, during, and after the hearing; and for counsels' candor before the Court in their presentation of argument.

Amendment of the United States Constitution, and, as well, under the free speech guarantee of Article I, § 8 of the Missouri State Constitution.  Defendants Jennifer M. Joyce, Daniel Isom, Chris Koster, and Ronald K. Replogle[2] are charged with enforcing the statute, and are being sued only in their official capacities.

In their Motion, Plaintiffs allege that they engage in peaceful protest activities, including leafletting and holding signs, on public sidewalks outside churches and locations used for religious purposes.  They further allege that they regularly engage in such activities to spread their messages near houses of worship in Missouri, and would like to continue to do so without risk of arrest or prosecution.  At issue is whether the statute reflects an acceptable balance between the constitutionally protected rights of law-abiding speakers to reach an audience of individuals who may have been physically, sexually or emotionally abused by clergy members, and the rights of individuals to worship without unwanted communication.

## II.     FACTUAL BACKGROUND

Plaintiff SNAP and its members regularly picket and distribute leaflets outside of churches, including churches in the City of St. Louis, where clergy alleged to have sexually abused children have served.  The purpose of SNAP's activities in these locations is to reach an audience of individuals, who may have been physically, sexually, or emotionally abused by clergy members, with SNAP's message that victims of such child abuse are not alone and that victims have certain rights.  Plaintiff Call to Action and its members participate in peaceful vigils outside of houses of worship across the country, including sites in Missouri, to advance the

_____

[2]The Court notes that Defendant Ronald K. Replogle has filed a Motion to Dismiss for Lack of Jurisdiction, asserting that he lacks sufficient connection to the enforcement of the Missouri House of Worship Protection Act for Plaintiffs to overcome his immunity from suit under the Eleventh Amendment [ECF No. 26].  That motion will subsequently be considered.

organization's mission of educating, inspiring, and activating Catholics to act for justice and to build inclusive communities.

When Plaintiffs learn of a new allegation that a child has been abused, some of their members visit the church where it is alleged that the abuse occurred, to make  potential victims aware that they have support, and to encourage conversation between parents and their children to determine if other victims might exist.

### III.    INJUNCTIVE RELIEF ANALYSIS

In determining whether preliminary injunctive relief is warranted, the Court is guided by *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) (superseded by statute on other grounds).  Injunctive relief is only appropriate where the party seeking the relief has no adequate remedy at law.   The relevant factors to be considered by a district court are: "(1)the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on the other interested parties; and (4) whether the issuance of an injunction is in the public interest." *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000) (citing *Dataphase*, 640 F.2d at 114).  No single factor is determinative.  *Dataphase*, 640 F.2d at 113.  "At base, the question is whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  *Id*.  The burden of establishing that preliminary relief is warranted is on the party seeking the injunction.  *Id*.  The parties agree that "the probability of success on the merits" is the most significant factor in this case.

A.     <u>Irreparable Harm</u>

Plaintiffs assert that they will suffer irreparable harm if the Court does not issue the requested preliminary injunction.  Plaintiffs contend that enforcement of Missouri Revised Statutes § 574.035 will hamper Plaintiffs and others from engaging in protected expressive activity.  They assert that the statute's First Amendment restrictions facially apply to speech on matters of public concern, and that § 574.035's broad definition of "house of worship" makes any "public place" or "private place" where an individual may choose to exercise his right to engage in free speech subject to the statute's speech restrictions.  Thus, Plaintiffs also claim that § 574.035 violates the due process clause of the Fourteenth Amendment, contending that the statute fails to give fair notice of where and when its restrictions would apply to expressive conduct.

Plaintiffs state that, after a victim of sexual abuse has been identified, they go to the church where the alleged abuse occurred, and conduct activities in nearby public spaces, such as sidewalks.  They further state that, although they have no intention to interrupt worship services or to enter into private property, the  purpose of their picketing and leaflet distributing is to capture attention and to generate awareness of their disturbing message concerning children abused by clergy.  Plaintiffs assert that the statute's vague terms, operating together, leave them to speculate as to whether their behavior could violate the statute.  Defendants admit that some of the statute's terms, such as "public or private place used for religious worship, religious instruction or other religious purpose" are fairly broad, and concede that it might be difficult to ascertain when a public place, such as a school gymnasium or park used for a worship service, ceases to become a public forum.

5

Plaintiffs claim that they and others will suffer irreparable harm if an injunction does not issue, asserting that, should Plaintiffs or others engage in speech about issue of public concern at public places near houses of worship, they could face the prospect of criminal charges, and thus would be chilled from engaging in speech.

Peaceful picketing is expressive conduct afforded First Amendment protection. *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008). "It is well-settled law that a 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Consequently, if Plaintiffs can show a sufficient likelihood of success on the merits of their First Amendment claim, they will also have established irreparable harm as a result of the deprivation. *Phelps-Roper*, 545 F.3d at 690. Further, because it is always in the public interest to protect constitutional rights, and the balance of the equities generally favors freedom of expression, in First Amendment cases such as this, the likelihood of success on the merits is frequently the dispositive factor in determining whether a preliminary injunction should issue. *Id.*

B.    Likelihood of Success

Plaintiffs claim that they are likely to succeed on the merits of their First Amendment challenge to § 574.035  because the statute's restrictions facially apply to speech on matters of public concern and at public places. They argue that the statute's broad definition of "house of worship" makes any public place where an individual might engage in speech subject to the statute's speech restrictions, and that, because speech at a public place on a matter of public concern "is entitled to 'special protection' under the First Amendment, such speech cannot be restricted simply because it is upsetting or arouses contempt." *See Hill v. Colorado*, 530 U.S. 703, 715 (2000) ("The fact that the messages conveyed by [communications protected by the

First Amendment] may be offensive to their recipients does not deprive them of constitutional protection.").

To establish a sufficient likelihood of success on the merits, Plaintiffs must show that they have a fair chance for success at trial or they have  "raised questions so serious and difficult to call for more deliberate investigation" at a full trial on the merits. *See Dataphase*, 640 F.2d at 113.  Importantly, however, in making this determination, the Court does not decide "whether Plaintiff[s] will ultimately win." *O'Connor v. Peru State College*, 728 F.2d 1001, 1002 (8th Cir. 1984).  In other words, the merits are not to be predetermined at this stage of the proceedings. *Id.* at 1003.

Plaintiffs concede that the statute's noise restriction is content-neutral, and even state that noise restriction would not be unconstitutional.   Although they acknowledge that the statute penalizes speech only if it disturbs the order and solemnity of worship services, Plaintiffs argue that § 574.035 is content-based because a sign, leaflet or speech would need to be examined to determine whether its communication constituted "profane discourse," or "rude or indecent behavior."   Accordingly, Plaintiffs say the statute's speech restrictions "likely" are content-based, and thus subject to heightened scrutiny.

It is not improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct. *Hill*, 530 U.S. at 721.   To illustrate some of the instances where examining the content of a communication to determine a speaker's purpose is common in the law, the Supreme Court stated:   "Whether a particular statement constitutes a threat, blackmail, an agreement to fix prices, a copyright violation, a public offering of securities, or an offer to sell goods often depends on the precise content of the statement." *Id*.  Thus, a need to  examine the content of a sign, leaflet or speech to determine if

7

the statute applies to an individual's conduct would not be improper, and does not necessarily make § 574.035's regulation a content-based restriction.

When determining whether governmental regulation of speech is content neutral, the principal inquiry is whether the restriction has been adopted "without reference to the content of the regulated speech." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 (1994) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Accordingly, the government's purpose for regulating the speech is the threshold consideration. *Madsen*, 512 U.S. at 763.

Defendants assert that the State has a significant interest in preserving the free exercise of religion and protecting those engaged in the free exercise of religion from being intentionally and unreasonably disturbed, interrupted and disquieted by noise on the street. Plaintiffs concede that § 574.035 promotes a significant government interest in preserving and protecting the free exercise of religion, and in preventing unwanted physical and oral intrusions into worship services, but contend that the statute prohibits more speech than necessary to further that interest.

As noted by Defendants, the statute's regulation is intended to address conduct that is intentionally and unreasonably disruptive; and thus, the actual content of the expressive conduct is not "prohibited *per se*." The statute's penalties could apply equally to an individual "playing Beethoven's Ninth Symphony at 190 decibels outside a church," or to an individual engaging in picketing activities "standing on the street outside a church reading a Bible verse at 150 decibels." Here, the statute's restrictions are not a regulation of speech, but rather of the places where some speech may occur and the manner of its conveyance; the regulation places no restrictions on a particular viewpoint or any subject matter that may be discussed by a speaker; and the State's interests in protecting the free exercise of religion are unrelated to the content of an individual's speech. *See Hill*, 530 U.S. at 719. There is no suggestion that the government

8

has adopted a regulation of speech because of any disagreement with any message being conveyed.  Rather, the statute's thrust is to restrict speech only when it is disruptive because of its manner, not its content.  *Compare Grayned v. City of Rockford*, 408 U.S. 104, 118-20 (1972). The Court agrees with Defendants, and finds § 574.035 to be content-neutral, and subject to assessment under the standard set forth in *Ward*, which requires a determination whether the statute's time, place, and manner regulations are "narrowly tailored to serve a significant governmental interest."  *Ward*, 491 U.S. at 791.

The scope of the statute's reach, extending to conduct "so near a house of worship as to disturb the order and solemnity of the worship service" would regulate traditional public fora used for expression, such as adjacent public streets or sidewalks.  *See Phelps-Roper*, 545 F.3d at 691.  Under the standard of review for such traditional public fora, a content-neutral time, place and manner regulation may be imposed in a public forum only if it: (1) serves a significant government interest; (2) is narrowly tailored; and (3) leaves open ample alternative channels of communication.  *Id.*

As discussed, Plaintiffs concede that the statute serves a significant government interest, but they contend that the statute is not narrowly tailored, that it burdens substantially more speech than necessary to serve the State's interest, and that § 574.035 fails to leave open ample alternatives for Plaintiffs to reach their intended audience with their message.

Plaintiffs' intended audiences are people attending specific churches where an allegation of abuse has been made.  Plaintiffs assert that their stated purpose, conveying a message of support for victims of abuse and encouraging identification of others who may have been similarly abused by an alleged abuser, can be addressed only at the houses of worship specifically identified, and, generally, only at times when individuals are entering or leaving worship

9

services.  Plaintiffs therefore claim that allowing them to picket or distribute leaflets at a more remote location or time would not give Plaintiffs enough opportunity to direct their intended message at their intended recipients.  However, Plaintiffs make no further effort to explain why there are no more alternatives to their reach intended audiences.  Although the statute's restrictions may make it less convenient or more difficult for Plaintiffs to communicate their message to their intended audience, Plaintiffs have not shown that remaining avenues of communication are inadequate, and may do so at a full hearing on the merits.  Plaintiffs are free to distribute their literature door-to-door, or by mail.  They may picket on the sidewalks and areas near the houses of worship when services are being conducted, and when services are not being held.  Moreover, the statute addresses acts or conduct that are intentional and unreasonable.  Plaintiffs and other demonstrators with leaflets might easily stand on the sidewalks (without blocking ingress or egress from the worship facilities) prior to, during, and at conclusion of services, and peacefully hand congregants leaflets as they pass by.  As written, the statute has no "floating buffer zone" provisions; furthermore, it places fewer obstacles to protesters than other statutes found not to offend the exercise of free speech.  *See Ward v. Rock Against Racism*, 499 U.S. 781, 801-03(1989); *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 376-77(1997).  "[W]hen a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal."  *Hill*, 530 U.S. at 726.

The Supreme Court has recognized the state's interest in protecting citizens from unwanted communications while in their homes, and while they are a "captive audience."  *See Frisby v. Schultz*, 487 U.S. 474, 479-84 (1988); *Madsen*, 512 U.S. at 768.  In *Olmer v. City of Lincoln*, the Eighth Circuit affirmed a preliminary injunction enjoining the enforcement of an

10

ordinance that restricted focused picketing of churches and other religious premises thirty

minutes before, during, and after any scheduled religious activity, because the regulation violated

the First Amendment.  *Olmer*, 192 F.3d 1176, 1178 (8th Cir. 1999).  There, four individuals,

opposing abortion in the vicinity of Westminster Presbyterian Church, objected to a physician

who performed abortions and was an elder of that church.  *Id*.  On the sidewalk adjoining the

church, the protestors carried signs reading, "Dr. Crabb is Unfit to be an Elder," "Jesus Loves the

Little Children," and "Life."  *Id*.  Among other provisions, the ordinance in *Olmer* spoke of the

vulnerability of children to "fear, unhappiness, anxiety and other emotional disturbance" from

picketing in close proximity.  *Id.* at 1178-79.  The Court found that the ordinance purported "to

make it unlawful for anyone to stand or walk on public sidewalks and public rights of way

adjoining religious premises, if that person [was] displaying a banner, placard, or sign, at certain

specified times."  *Id*, at 1179.

The *Olmer* Court acknowledged that the city's claim of a legitimate interest in preserving

the right of its citizens to exercise their religion freely was substantial and important.  *Id*. at 1180.

In ruling the ordinance to be unconstitutional, the majority in *Olmer* concluded the city had no

legitimate interest in shielding young children from the mere presence of persons carrying signs

on the sidewalk.  Furthermore, the Court ruled that the ordinance was not narrowly tailored in

that it "purports to make the carrying of signs at the indicated times and places unlawful, no

matter what the signs say or depict, and this prohibition is much broader than necessary to protect

the psychological interest of young children as found by the district court."  *Id.* at 1180.  Here the

facts are different, and on a case by case analysis, *Olmer* does not require issuance of a

preliminary injunction.

11

Plaintiffs here, as peaceful demonstrators, face relatively minimal restriction on their activities.  They may freely walk on the public areas adjacent to houses of worship, carry signs and banners, and distribute leaflets communicating their message before services, when services are not being held, and Plaintiffs may do so even during worship services, as long the manner in which they conduct their activities is not intentionally or unreasonably disruptive.  *See id*.; *Hill*, 530 U.S. at 725-26; *Madsen*, 512 U.S. at 772-73; *Ward*, 491 U.S. at 796-800.

Plaintiffs further argue that the statute violates the Fourteenth Amendment's due process clause, asserting that § 574.035 fails to provide clear notice of where and when its restrictions would apply to expressive conduct.  They contend that the statute's broad definition of what constitutes a house of worship makes any public place where an individual might engage in speech subject to the statute's restrictions.  Plaintiffs also argue that the terms "disquiets," "disturbs," "profane discourse," and "rude or indecent behavior" are unconstitutionally vague. Plaintiffs assert that their message regarding children being abused by clergy could be disquieting or disturbing to their intended audiences.  They also claim that they will be unreasonably restrained from protected speech for fear that someone might consider their expression unlawful under the statute.

What constitutes an interruption or disruption of a lawful assemblage generally is determined on a case by case basis.  *See Burson v. Freeman*, 504 U.S. 191, 206-208 (1992); *Grayned*, 408 U.S. at 119; *Cox v. Louisiana*, 379 U.S. 559, 562-63 (1965).  Behavior that actually interferes with successful conduct of a meeting or worship service is a disruption.  *See Olmer*, 192 F.3d at 1180-81 (noting that municipalities could adopt specific prohibitions directed against disturbing or interrupting services of worship should protestors attempt to enter a church without permission or to interrupt church services with their own speech).

12

Courts find statutes to be impermissibly vague if:  1) they fail to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited; or 2) they authorize or encourage arbitrary and discriminatory enforcement.  *Hill*, 530 U.S. at 732.

The Court notes that Plaintiffs' challenge to the statute's definition of "house of worship" as overbroad  seems at odds with their contention that their purpose could only be addressed at the specific churches where an allegation of abuse has been made.  Targeting an audience at a particular place of worship necessarily implies knowledge of its use for religious worship, religious instruction, or other religious purpose.  As the Supreme Court observed in *Grayned*, "It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.'" *Grayned*, 408 U.S. at 111, n. 15 (citation omitted).  Nevertheless, the overbreadth doctrine enables plaintiffs to challenge a statute due to a judicial assumption that the statute's restrictions may cause others not before the court to refrain from constitutionally protected communication.  *Hill*, 530 U.S. at 731-32.  Accordingly, the Court considers Plaintiffs' contention that protestors could unknowingly violate the statute in instances where parks, homes, public schools, community centers, or similar locations are used for religious purposes.

Defendants acknowledge that the statute broadly defines what constitutes a house of worship, and they further concede that the terms "profane discourse" and "rude or indecent behavior" are vague, and even "somewhat content-based."  Defendants argue, however, the statute is not void for vagueness because its language is sufficient to put ordinary people on notice of the conduct it prohibits, and does not authorize or encourage arbitrary or discriminatory enforcement.

13

Merriam-Webster Online Dictionary defines "disturb" as "to interfere with: interrupt," and "disquiet" as "to take away the peace or tranquility of: disturb, alarm."  Merriam-Webster Online Dictionary (2012), http://www.merriam-webster.com.  "Profane" is defined as "serving to debase or defile what is holy: irreverent" or "obscene, vulgar."  *Id.*  "Rude" behavior is conduct that is "offensive in manner or action: discourteous," and "indecent" conduct is that which is "grossly improper or offensive."  *Id.*   The definition and meanings of the terms used in § 574.035 are of common understanding, used frequently by the general public in the common discourse of everyday life.  Although Plaintiffs maintain that the statute fails to provide an ascertainable standard of conduct from which a reasonable person could determine the limits of acceptable behavior in situations where a worship service is being held, their argument overlooks the standards of appropriate and acceptable conduct, as established by society at large, for such assemblies.  The language of § 574.035 is sufficient to put ordinary people on notice of the conduct it prohibits, and the statute's scienter requirement adequately addresses Plaintiffs' concern that protestors could unknowingly violate the statute in instances where parks, homes, public schools, community centers, or similar locations are used for religious purposes.

Defendants contend that the applicability of the statute's regulation is dependent on whether an individual intends to engage in conduct that a person could reasonably assume would disrupt, disturb, interrupt, or disquiet a worship service.  They assert that the statute's language addresses speech, sound, or activity that could be perceived by individuals during their attendance in a worship service, maintaining that the statute's prohibition is not dependent on the content of the message uttered outside a house of worship, but the degree to which the act of delivering it intentionally disrupts the solemnity of the service.  This Court agrees.  What the statute prohibits is willful behavior intended to interfere with the successful conduct of a worship

14

service.  The probability that a reasonable person would not understand any of the common terms used to describe the prohibited behavior is quite remote.  Notably, several state courts have upheld statutes with language similar to that contained in § 574.035 against vagueness challenges.  *See e.g., Hill v. State*, 381 So.2d 206 (Ala. Crim. App. 1979) (" . . .  wilfully interrupts or disturbs any assemblage of people met for religious worship, by noise, profane discourse, rude or indecent behavior or any other act, at or near the place of worship . . ."); *People v. Cruz,* 101 Cal. Rptr. 711 (Cal. App. Dep't Super. Ct. 1972) (" . . . willfully disturbs or disquiets any assemblage of people met for religious worship, by profane discourse, rude or indecent behavior, or by any unnecessary noise, either within the place where such meeting is held, or so near it as to disturb the order and solemnity of the meeting . . .); *State v. Davis*, 257 N.E.2d 79 (Ohio Ct. App. 1969) (" . . . willfully interrupt or disturb a lawful assemblage of persons or a person while he is at or about the place where such assemblage is to be held, or is or has been held").

Plaintiffs claim that the balance of inequities favors an injunction due to the threat of irreparable harm caused by the deprivation of their First Amendment freedom of expression, and the State's interests in preserving and protecting the free exercise of religion and in preventing unwanted physical and oral intrusions into worship services are amply addressed by existing state trespass or noise restriction laws.   However, the Court finds that § 574.035 does not regulate expression in such a manner that a substantial degree of its restriction on speech fails to serve to advance its purpose.  Such a narrowly tailored regulation will not be found to be "invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative."  *See Ward*, 491 U.S. at 799-800.  Defendants counter that, if

an injunction is granted, the harm imposed upon individuals exercising their freedom of religion will outweigh any irreparable harm to Plaintiffs if no order is issued.  This Court agrees.

The Court emphasizes that the findings and conclusions which lead the Court to determining whether there is a likelihood of success on the merits are not binding in the forthcoming proceedings on the Plaintiffs' Complaint.  Nor does Court determine the constitutionality of the statute in this decision.  However, the Court concludes that Defendants' hardship outweighs the hardship imposed on Plaintiffs if Defendants were to be enjoined from enforcing Missouri Revised Statutes § 574.035.

After considering the record and the argument offered in this matter, the Court finds that Plaintiffs have not made a sufficient showing that they have a likelihood for success at trial.  For the reasons discussed, the Court concludes that Plaintiffs have not meet their burden on this *Dataphase* factor, in that they have not shown such a sufficient likelihood of success as to support injunctive relief.

Given the harm enjoining the statute will pose to Defendants, and the public interest that denying Plaintiffs' requested relief will serve, the Court will deny injunctive relief.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction [ECF No. 5] is **DENIED**.

So Ordered this 28th  day of September, 2012.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

16