UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SURVIVORS NETWORK OF THOSE ABUSED BY PRIESTS, INC.; DAVID BIERSMITH; HOLLY HESEMANN; AND CALL TO ACTION, INC.; | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 4:12CV1501 ERW |
| JENNIFER M. JOYCE, solely in her official capacity as the Circuit Attorney for the City of St. Louis, Missouri; SAMUEL DOTSON,[1] III, solely in his official capacity as the Chief of Police for the Metropolitan Police Department for the City of St. Louis, Missouri; CHRIS KOSTER, solely in his official capacity as the Attorney General of the State of Missouri; and RONALD K. REPLOGLE, solely in his official capacity as Superintendent of the Missouri Highway Patrol; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Motion for Partial Summary Judgment [ECF No. 43] filed by Plaintiffs Survivors Network of Those Abused by Priests, Inc. ("SNAP"), David Biersmith, Holly Hesemann, and Call to Action, Inc.; and Defendants' Motion for Summary Judgment [ECF No. 46].

---

[1]Plaintiffs' Amended Complaint named Daniel Isom as a defendant, only in his official capacity as the Chief of Police for the St. Louis Metropolitan Police Department. Daniel Isom has since resigned his position, and his successor is Samuel Dotson III [ECF Nos. 41, 42]. Accordingly, Samuel Dotson III is substituted for Defendant Daniel Isom, in his official capacity as Chief of Police for the Metropolitan Police Department for the City of St. Louis, Missouri.

Plaintiffs have filed an Amended Complaint against Defendants Jennifer M. Joyce, solely in her official capacity as the Circuit Attorney for the City of St. Louis; Samuel Dotson, III, solely in his official capacity as the Chief of Police for the Metropolitan Police Department of St. Louis; Chris Koster, solely in his official capacity as the Attorney General of the State of Missouri; and Ronald K. Replogle, solely in his official capacity as Superintendent of the Missouri Highway Patrol [ECF No. 21].  In their Amended Complaint, Plaintiffs seek declaratory judgment and injunctive relief, pursuant to 42 U.S.C. § 1983, in an action challenging provisions of recently enacted Missouri Revised Statute § 574.035.  Plaintiffs assert three counts in their Amended Complaint, alleging that the statute, also known as the "House of Worship Protection Act," is unconstitutional under the free speech provisions of the First Amendment (Count I), the due process clause of the Fourteenth Amendment of the United States Constitution (Count II), and, as well, the free speech guarantee of Article I, § 8 of the Missouri State Constitution (Count III).  Defendants are charged with enforcing the statute.

The challenged statute, Missouri Revised Statutes § 574.035, "House of worship protection act -- disrupting a house of worship, violation, penalty," became effective on August 28, 2012, and provides:

1.      This section shall be known and may be cited as the "House of Worship Protection Act".

2.      For purposes of this section, "house of worship" means any church, synagogue, mosque, other building or structure, or public or private place used for religious worship, religious instruction, or other religious purpose.

3.      A person commits the crime of disrupting a house of worship if such person:

(1)      Intentionally and unreasonably disturbs, interrupts, or disquiets any house of worship by using profane discourse, rude or indecent behavior, or making noise either within the house of worship or so near it as to disturb the order and solemnity of the worship services; or

2

(2)      Intentionally injures, intimidates, or interferes with or attempts to injure, intimidate, or interfere with any person lawfully exercising the right of religious freedom in or outside of a house of worship or seeking access to a house of worship, whether by force, threat, or physical obstruction.

4.      Disrupting a house of worship is a class B misdemeanor.  Any second offense is a class A misdemeanor.  Any third or subsequent offense is a class D felony.

In a Motion for Preliminary Injunction filed in this matter, Plaintiffs requested this Court to issue a preliminary injunction, enjoining enforcement of Missouri Revised Statutes § 574.035, until further order of the Court; waive bond or set bond in a nominal amount; and allow Plaintiffs such other and further relief as is just and proper under the circumstances.  Plaintiffs alleged that they engage in peaceful protest activities, including leaf-letting and holding signs, on public sidewalks outside churches and other locations used for religious purposes.  They further alleged that they regularly engage in such activities to spread their messages near houses of worship in Missouri, and would like to continue to do so without risk of arrest or prosecution.  Plaintiffs contended that the restrictions of § 574.035 would chill Plaintiffs and others from engaging in protected expressive activity.

After hearing argument from the parties, the Court denied Plaintiffs' Motion for Preliminary Injunction on September 28, 2012, finding that the Plaintiffs had not made a sufficient showing that they had a likelihood for success at trial [ECF No. 33].  The Court further found that § 574.035 does not regulate expression in such a manner that a substantial degree of its restriction on speech fails to serve to advance its purpose, and that the harm granting an injunction would impose upon individuals exercising their freedom of religion outweighed any harm to Plaintiffs if no order were issued.  In its Order, however, the Court emphasized that the findings and conclusions, which led it to determine Plaintiffs had not shown a likelihood of

success on the merits, were not binding in the forthcoming proceedings on the Plaintiffs'

Complaint; and the Court stated that it was not determining the constitutionality of the statute in

its decision denying Plaintiffs injunctive relief.

## II.     FACTUAL BACKGROUND

Plaintiff SNAP and its members regularly picket and distribute leaflets outside of

churches, including churches in the City of St. Louis, where clergy, alleged to have sexually

abused children, have served.  The purpose of SNAP's activities in these locations is to reach an

audience of individuals, who may have been physically, sexually, or emotionally abused by

clergy members, with SNAP's message that victims of such child abuse are not alone and that

victims have certain rights.

When SNAP learns of a new allegation that a child has been abused, some of their

members visit the church where it is alleged that the abuse occurred, to make  potential victims

aware that they have support, and to encourage conversation between parents and their children

to determine if other victims might exist.

Plaintiff Call to Action ("CTA") and its members participate in peaceful vigils outside of

houses of worship across the country, including sites in Missouri, to advance the organization's

mission of educating, inspiring, and activating Catholics to act for justice and to build inclusive

communities.  Messages conveyed by participants in CTA's pickets include support for: full

equality for lesbian, gay, bisexual and transgender people both in the Church and in civil society,

including marriage equality; women's rights, including ordination and participation as altar girls;

racial justice; and protecting children from abusive clergy.

### III.    SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The United States Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Id.* at 327 (citation omitted).  "By its terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)(emphasis in original).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor.  *City of Mt. Pleasant, Iowa v. Assoc'd Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  Once this burden is discharged, if the record does in fact bear out that no genuine dispute

exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c). To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party that would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV.  DISCUSSION

At issue is whether the statute reflects an acceptable balance between the constitutionally protected rights of law-abiding speakers to reach an audience of individuals who may have been physically, sexually or emotionally abused by clergy members, and the rights of individuals to worship without unwanted communication. In Plaintiffs' Motion for Partial Summary Judgment [ECF No. 43], Plaintiffs argue that there are no material facts in dispute that preclude granting summary judgment to Plaintiffs on Counts I and II of their Amended Complaint. In their Motion for Summary Judgment and Supporting Memorandum [ECF Nos. 46, 47], Defendants agree that there is no genuine dispute of material fact. They state that the parties have completed discovery, and that the questions presented in this case are purely legal in nature. Defendants contend the Act poses a narrowly tailored time, manner and place restriction that serves a significant

governmental interest and leaves open ample alternative channels of free expression, and they move for summary judgment in their favor on all counts of the Amended Complaint.

    1.    <u>Count I</u>

Plaintiffs claim that the statute is not content-neutral because: 1) it restricts categories of non-noisy expression, making unlawful only non-noisy protest that is rude, profane or indecent; 2) its restriction depends upon the subjective response of third parties; and 3) the statute gives expression categorized as a worship service preferential access to public fora.   Plaintiffs further contend Defendants have "no evidence supporting the need for the speech restriction or the notions that the restriction is narrowly tailored and would leave open ample alternatives" [ECF No. 49 at 6].  They claim that, without such evidence, it is impossible for Defendants to meet their burden of justifying the statute's restriction on speech, and therefore, Plaintiffs are entitled to summary judgment on Count I, because Mo. Rev. Stat. § 574.035 violates the Free Speech Clause of the First Amendment.

In their Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment [ECF No. 55], Defendants note that Missouri "has seen its share of protests outside churches and funerals," and state the Court may presume the Missouri legislature was aware of the history of funeral protest laws in Missouri and case law upholding similar regulations in other jurisdictions when the legislature enacted § 574.035.  Defendants contend that the Act is content-neutral, stating that the expressive conduct prohibited in § 574.035 is not limited to a particular message or viewpoint or dependent on the content of the message uttered.  They assert that profane discourse, rude or indecent behavior, and making noise outside a church, are not prohibited *per se*; Defendants claim that the actual content of the expressive conduct does not matter, as the activities are prohibited only to the extent they disturb, interrupt, or disquiet a

worship service taking place inside that church.  Defendants also argue that the Act is not limited

to "certain categories of expression," claiming that the Act is focused on the purpose of the

speaker, not the speaker's message and that the regulation places no restrictions on a particular

viewpoint or subject matter.  Defendants contend the gravamen of the offense is intentional and

unreasonable disruption, not profanity or indecency.  They further claim the Act does not depend

on the subjective response of third parties, because the statute's inclusion of the term

"unreasonably" makes the question become whether a reasonable person would be disturbed by

the activity during a worship service.

Regarding Plaintiffs' claim that the Act is content-based because it singles out religious

speech for protection, Defendants argue that the Act protects worship services, not speech, and,

again, is concerned only whether the conduct or expression outside a house of worship is

intentionally and unreasonably disruptive to the worship service inside.  They further argue that

the First Amendment permits the government to protect individual privacy by enacting

reasonable time, place and manner regulations applicable to all speech irrespective of content.

Defendants contend the Act serves a significant governmental interest by protecting the

free exercise of religion from intentional and unreasonable disruption.  Defendants also contend

the Act is narrowly tailored to serve the significant governmental interest in preserving the free

exercise of religion by prohibiting expression in public fora only if it is intentional, unreasonable,

and so near a house of worship as to disturb the order and solemnity of the worship services.

Defendants further argue that the Act leaves open ample alternatives for Plaintiffs to convey their

message to their intended audience, as the Act permits Plaintiffs to engage in any form of

expression in any public forum or private property in Missouri, with the exception of "expression

outside a house of worship that is so loud or so bright that is penetrates the solemnity of the worship service inside."

Peaceful picketing activities are expressive conduct afforded First Amendment protection. *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 686 (8th Cir. 2012). Citizens have a "right to attempt to persuade others to change their views." *Id.* at 686 (quoting *Hill v. Colorado*, 530 U.S. 703, 716 (2000)). Furthermore, this right may not be restricted simply because the speaker's message may offend his audience. *Phelps-Roper*, 697 F.3d at 686.. However, this right is not absolute; the government may curtail disruptive and unwelcome speech to protect unwilling listeners when other important interests and values are implicated. *Id.* When presented with competing interests and values, courts must determine an "acceptable balance between the constitutionally protected rights of law-abiding speakers and the interests of unwilling listeners." *Id.* (internal quotation marks and citation omitted).

The constitutionality of a statute regulating the exercise of protected speech in a public forum is largely dependent upon whether the restriction is content-based or content neutral. *Id.* Content-based regulations are presumptively invalid, and are subject to the most exacting scrutiny. *Id.* Consequently, content-based restrictions must be narrowly tailored to serve a compelling government interest. *Id.* Content neutral regulations are tested by intermediate scrutiny, and must be narrowly tailored to serve a significant government interest and allow for ample alternative communication channels. *Id.*

In its September 28, 2012 Memorandum and Order denying Plaintiffs' Motion for Preliminary Injunction, the Court determined that the regulation places no restrictions on a particular viewpoint or subject matter, and found that the statute's restrictions are not a

regulation of speech, but rather of the places where speech may occur and the manner of its conveyance.  Consequently, the Court concluded that § 574.013 is content-neutral.

Plaintiffs have conceded that the statute's noise restriction is content-neutral, and have even stated that noise restriction would not be unconstitutional.  However, in their summary judgment pleadings, and during the hearing on the parties' summary judgment motions, Plaintiffs, citing *Whitton v. City of Gladstone*, 54 F.3d 1400 (8th Cir. 1995) and *Cohen v. California*, 403 U.S. 15 (1971), otherwise disagree with the Court's finding of content neutrality. Plaintiffs again argue that § 574.035 is a content-based restriction, stating that determining that a law "is viewpoint neutral does not mean that it is content neutral."  Plaintiffs argue that *Cohen* and *Whitton* provide useful illustrations for the matter now before the Court, claiming that the restriction on expressive conduct here, similar to the restrictions on the offensive conduct in *Cohen*, and the political speech in *Whitton*, "albeit viewpoint-point neutral, criminalizing profane, rude, or indecent expressive conduct or activity, is content-based."  The Court does not find Plaintiffs' argument persuasive, as both cases are distinguishable, and their holdings are not applicable to the factual situation presented in this case.

In *Whitton*, the City of Gladstone appealed from a district court's order holding that several provisions of its sign code regulating the use of political signs, were impermissible restraints on free speech and therefore unconstitutional.  54 F.3d at 1401.  Whitton cross-appealed from the district court's order holding that other related provisions of the sign code were constitutional.  *Id.*  The Eighth Circuit held that a section of the sign code containing durational limitations applicable to only political signs was a content-based restriction, because it made impermissible distinctions based solely on the content or message conveyed by the sign. *Id.* at 1403-04.  Among other things, the Court was unpersuaded by the City's argument that the

section was content-neutral because the durational limitations applied across-the-board to all political candidates and did not espouse a particular viewpoint.  *Id.* at 1405.  The Court stated the Supreme Court has repeatedly rejected the argument that a restriction on speech is content-neutral because it is viewpoint-neutral.  *Id.*  The House of Worship Protection Act is different from ordinances, like the City of Gladstone's sign code, that limit expression on political issues.  Unlike the city's sign code, which applied only to political signs, the restrictions contained in the House of Worship Protection Act do not make distinctions based solely on the content or message conveyed by protestors outside a house of worship.  Rather, as stated above and in this Court's September 28 Order, the statute is intended to restrict only the place where, and the time when, disruptive speech may occur, and, only speech that is intentionally and unreasonably disruptive because of the manner of its conveyance.

In *Cohen*, the defendant was arrested for violating a penal code statute that prohibited "maliciously and willfully disturb(ing) the peace or quiet of any neighborhood or person . . . by . . . offensive conduct[,]" when he walked through a courthouse corridor wearing a jacket bearing the words, "F— the Draft."  *Cohen*, 403 U.S. at 16.  The Supreme Court's decision narrowly defined the issue presented as whether California could "excise, as 'offensive conduct,' one particular scurrilous epithet from the public discourse, either upon the theory of the court below that its use is inherently likely to cause violent reaction or upon a more general assertion that the States, acting as guardians of public morality, may properly remove this offensive word from the public vocabulary." *Id*. at 22-23.  The Supreme Court found the rationale of the lower court "plainly untenable."  *Id.* at 23.  The Court reversed the defendant's conviction, stating that the following "particularized considerations" "peculiarly call[ed] for reversal": 1) "the principle contended for by the State seem[ed] inherently boundless"; 2) the episode illustrated that much

linguistic expression served a dual communicative expression, conveying otherwise inexpressible emotions as well as ideas; and 3) the Court could not "indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process." *Id*. at 25-26.

Consideration of the Supreme Court's narrow definition of the issue presented in *Cohen* makes it very apparent that the decision's holding also is readily distinguishable.  The statute here does not attempt to excise from the public discourse, as offensive conduct, any particular "scurrilous epithet," or even any particular or general message.  Instead, § 574.035 applies to all picketing or other protest activities disruptive of worship services without regard to the content of the message conveyed.  As noted in the Court's September 28 Order, the limitations of § 574.035 could apply equally to an individual playing an acclaimed classical piece of music at 190 decibels outside a church, or to an individual shouting a verse from the Bible over a bullhorn. The statute penalizes only speech that intentionally disturbs the order and solemnity of worship service; the actual content of the expressive conduct is not "prohibited *per se*."

When determining whether governmental regulation of speech is content neutral, the principal inquiry is whether the restriction has been adopted "without reference to the content of the regulated speech."  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 (1994) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).  Accordingly, the government's purpose for regulating the speech is the threshold consideration.  *Madsen*, 512 U.S. at 763. The Court finds that the State's purpose for regulation here, to protect the free exercise of religion, is unrelated to the content of the individual's speech.

The House of Worship Protection Act is much like the City of Manchester's funeral protest ordinance found to be content-neutral in *Phelps-Roper v. City of Manchester*, 697 F.3d at

678, 695-96.  The Manchester ordinance, which bars picketing and other protest activities within 300 feet of any funeral or burial site during or within one hour before or one hour after the conducting of a funeral or burial service at that place, defines "other protest activities" as "any action that is disruptive or undertaken to disrupt or disturb a funeral or burial service."  *Id*. at 695-96.  The Eighth Circuit, stressing that the plain meaning of the ordinance's text was controlling, determined that the Manchester funeral protest ordinance was only a regulation of the places where some speech may occur and was not enacted because of disagreement with the message conveyed by any speech.  *Id*. at 688.  The Eighth Circuit further found that the asserted purpose of the ordinance was unrelated to the content of a funeral protestor's speech.  *Id*.

Here, also, the House of Worship Protection Act applies equally to anyone engaged in intentionally disruptive expressive conduct without regard to its content.  Plaintiffs also suggest that § 574.035 is content-based because a court might have to look at the subject matter of protestors' speech to determine whether it is profane discourse, rude, or indecent behavior undertaken to intentionally and unreasonably disturb, interrupt or disquiet a house of worship.  However, the Supreme Court, noting that it might be necessary to review the content of speech to ascertain if a speaker is engaged in actual protest activity or simply social or random conversation, has determined such a "'cursory examination' does not transform an otherwise content neutral statute into a content based regulation."  *Id.* at 689.  Accordingly, the Court concludes that the House of Worship Protection Act is content-neutral, because the statute's thrust is to restrict speech only when it is disruptive because of its manner, not its content.  The Act merely limits when and where picketing and other protest activities may occur in relation to a worship service, without regard for the speaker's viewpoint.

Content neutral time, place, or manner regulations are tested by intermediate scrutiny. *Phelps-Roper*, 697 F.3d at 686. The scope of the House of Worship Protection Act's reach, extending to conduct "so near a house of worship as to disturb the order and solemnity of the worship service," would regulate traditional public fora, such as adjacent public streets or sidewalks, used for expression. A content-neutral time, place and manner regulation may be imposed in a public forum, only if the restriction: 1) serves a significant governmental interest; 2) is narrowly tailored; and 3) allows for ample alternative channels for communication. *Id*. at 686.

The Court shall first consider whether § 574.035 serves a significant governmental interest. Plaintiffs have conceded that the Act promotes a significant government interest in preserving and protecting the free exercise of religion, and in preventing unwanted physical and oral intrusions into worship services, but they contend that the statute prohibits more speech than necessary to further that interest.

After reviewing the developments in Supreme Court jurisprudence, demonstrated by *Madsen*, 512 U.S. 753, and *Hill v. Colorado*, 530 U.S. 703 (2000), that have extended beyond the home the state's interest in protecting citizens from unwanted speech, the Eighth Circuit noted that the government can show an interest in protecting an individual's privacy in "confrontational settings," and in circumstances when the offensive speech becomes "so intrusive that the unwilling audience cannot avoid it." *Phelps-Roper*, 697 F.3d at 692. Reasoning that the privacy interest of mourners attending funerals or burials is analogous to the interests that the Supreme Court has recognized for individuals in their residences, and for patients entering medical facilities, the Court determined that the City of Manchester had a significant interest in protecting the privacy of funeral attendees; and it concluded that the ordinance advanced that interest because it solely focused on the funeral or burial ceremony, and

14

covered only the relatively short time around the event.  *Id.* at 691-93.   Likewise here, the state has a significant interest in protecting individuals' right to peaceably assemble and to exercise their religious freedom.  The Court concludes that the House of Worship Protection Act advances that interest because its thrust focuses on the worship service, and covers only the relatively short time around the service.

The next question before the Court is whether § 574.035 is narrowly tailored and permits ample alternative channels for Plaintiffs' means of communication.  While a valid time, place or manner restriction need not be the least limiting or least intrusive means of advancing the state's interest, the statute's regulation may not restrict substantially more speech than is necessary.  *Id.* at 693.  The House of Worship Protection Act limits "profane discourse, rude or indecent behavior, or noise either within the house of worship or so near it as to disturb the order and solemnity of the worship services."  The statute defines "house of worship" as "any church, synagogue, mosque, other building or structure, or public or private place used for religious worship, religious instruction, or other religious purpose.  Section 574.035 penalizes such conduct only if it disturbs, interrupts, or disquiets a house of worship, and only if the conduct is intentional and unreasonable.  Thus, the statute is fairly construed not to apply to picketing or other protest activities which may unwittingly occur either within the house of worship, or so near it as to disturb the order and solemnity of the worship services, during the statute's time restriction.  Moreover, the statute protects events, not locations, and only limits expressive conduct for a relatively short period, during the time a worship service is being conducted, an event with a fixed time and location.

The narrow tailoring of § 574.035 becomes more apparent when the question of whether it leaves ample alternative means for Plaintiffs to disseminate their message.  The statute does

not prevent individuals from publicizing their message or presenting their views.   Plaintiffs'
intended audiences include people attending specific churches where an allegation of abuse has
been made.  Plaintiffs assert that this stated purpose, conveying a message of support for victims
of abuse and encouraging identification of others who may have been similarly abused by an
alleged abuser, can be addressed only at the houses of worship specifically identified, and,
generally, only at times when individuals are entering or leaving worship services.  Plaintiff CTA
supports social issues that are contrary to the church's position, and CTA members hold
informational pickets near house of worship to articulate the particular messages they wish to
communicate to audiences that include church goers, church leader, and church employees.
Plaintiffs therefore claim that allowing them to picket or distribute leaflets at a more remote
location or time would not give Plaintiffs enough opportunity to direct their intended message at
their intended recipients.  However, the Court disagrees, as it finds that the statute leaves ample
alternative avenues for Plaintiffs to communicate their messages.

      Protestors and leaflet distributors such as Plaintiffs are free to picket and spread their
message on the sidewalks and areas near the houses of worship when services are being
conducted, and when services are not being held.  Plaintiff CTA holds most of their
informational pickets on public sidewalks at churches, but they occasionally get approval from
church leadership to hold demonstrations on church property.  Recently, CTA members
participated in a church-approved demonstration on church property to express a message of
support for the Leadership Conference of Women Religious and against church hierarchy.
Plaintiffs may engage in their expressive conduct anywhere else in the community wherever and
whenever they desire.  Furthermore, they are free to "go door-to-door to proselytize their view,"
may distribute their pamphlets by mail, may write letters to the editor, and may contact

individuals by telephone or the internet. *See Phelps-Roper*, 697 F.3d at 695; *Frisby v. Schultz*, 487 U.S. 474, 483-84 (1988)**.**  Plaintiffs and other demonstrators with leaflets might easily stand on the sidewalks (without blocking ingress or egress from the worship facilities) prior to, during, and at conclusion of services, and peacefully hand congregants leaflets as they pass.  As written, the statute has no "floating buffer zone" provisions; furthermore, it places fewer obstacles to protesters than other statutes found not to offend the exercise of free speech.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 801-03 (1989); *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357, 376-77(1997).

For these reasons, the House of Worship Protection Act does not restrict substantially more speech than is necessary to serve the state's significant interest.  The Court concludes that Plaintiffs have not shown that the statute violates the free speech provisions of the First Amendment.  As to Count I, the Court will deny Plaintiffs' Motion for Summary Judgment, and will grant summary judgment to Defendants.

2. <u>Count II</u>

Plaintiffs argue that they are entitled to summary judgment on Count II of their Amended Complaint, stating that the statute is constitutionally vague and substantially overbroad [ECF Nos. 49, 58].

Defendants contend that summary judgment on Count II should be granted in their favor, because the House of Worship Protection Act does not violate the Free Speech clauses of the U.S. or Missouri Constitution and is not impermissibly vague.  Defendants state that the Act is sufficiently drafted to put a person of ordinary intelligence on reasonable notice as to what conduct is prohibited.   Defendants argue that § 574.035 is not void for vagueness, because: 1) the Act, by its own terms, applies only to "intentional" conduct, and thus includes a scienter

17

requirement; and 2) the Act's proscriptions are limited to conduct that "unreasonably" disturbs, interrupts, or disquiets, and ordinary jurors are constantly charged with determining the reasonableness of conduct.  Defendants note that many states, including Missouri, have "long used nearly identical language to proscribe the intentional disruption of religious services" and that "[c]ourts across the country have long rejected vagueness challenges to similar statutes" [ECF No. 47 at 14-15].

Plaintiffs first contend that the terms "rude," and "indecent," "profane," and "intentionally" are unconstitutionally vague; and that "disturb," "interrupt," and "disquiet," have "uncertain meanings when their object is a place, not a person."  Plaintiffs claim Defendants have not described how an individual "determines that expression will disturb, disquiet, or interrupt an inanimate object like a building or structure, or that a given demonstration has done so" [ECF No. 58 at 13].  Plaintiffs assert that their message regarding children being abused by clergy could be disquieting or disturbing to their intended audiences.  Next, Plaintiffs contend that the terms are unconstitutionally vague because they allow law enforcement officials enormous discretion to decide whether certain speech is prohibited and whether to arrest the speaker. Third, Plaintiffs argue that the statute does not provide fair notice of what expressive conduct is likely to become unlawful.  They contend that inclusion of the word "unreasonably" in the statute does not cure its vagueness problems and that the statute fails to provide fair notice of what constitutes a violation. They also argue that they will be unreasonably restrained from protected speech for fear that someone might consider their expression unlawful under the statute.  Fourth, Plaintiffs argue that the broad definition of "house of worship" makes any location subject to the Act's reach, without notice to a speaker.  They propose that a less-restrictive means for protecting religious worship on private property would be to define "house of worship" as

18

meaning "any church, synagogue, mosque, other non-public building or structure, or private place used for religious worship, religious instruction, or religious purpose."

Courts find statutes to be impermissibly vague if:  1) they fail to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited; or 2) they authorize or encourage arbitrary and discriminatory enforcement.  *Hill*, 530 U.S. at 732. The terms that Plaintiffs challenge are words of common usage and definition, and a person of ordinary intelligence would know by reading § 574.035 that if he or she acts with the purpose of disrupting a worship service, he subjects himself to criminal activity.  Merriam-Webster Online Dictionary defines "disturb" as "to interfere with: interrupt," and "disquiet" as "to take away the peace or tranquility of: disturb, alarm."  Merriam-Webster Online Dictionary (2012), http://www.merriam-webster.com.  "Profane" is defined as "serving to debase or defile what is holy: irreverent" or "obscene, vulgar."  *Id.*  "Rude" behavior is conduct that is "offensive in manner or action: discourteous," and "indecent" conduct is that which is "grossly improper or offensive."  *Id.*

The definition and meanings of the terms used in § 574.035 are of common understanding, used frequently by the general public in the common discourse of everyday life. What constitutes an interruption or disruption of a lawful assemblage generally is determined on a case by case basis.  *See Burson v. Freeman*, 504 U.S. 191, 206-208 (1992); *Grayned v. City of Rockford*, 408 U.S. 104, 119 (1972) (antinoise ordinance punishing only conduct which disrupts or is about to disrupt normal school activities; decision made on individualized basis, given particular fact situation); *Cox v. Louisiana*, 379 U.S. 559, 562-63 (1965).  Behavior that actually interferes with successful conduct of a meeting or worship service is a disruption.  *See Grayned*, 408 U.S. at 112-14 (antinoise ordinance prohibiting the "making of any noise or diversion which

disturbs or tends to disturb the peace or good order of such school session or class thereof . . ." was not impermissibly vague; ordinance clearly "delineates its reach in words of common understanding"); *Phelps-Roper*, 697 F.3d at 693-94 (noting ordinance's language limiting picketing and other protest activities, defined as "any action that is disruptive or undertaken to disrupt or disturb a funeral or burial service" same as language the Sixth Circuit interpreted as restricting such activities that are *directed at* funeral or burial services; ordinance found to be fairly construed not to apply to picketing or other protest activities which may unwittingly occur within the described buffer zone and time restrictions).

Although Plaintiffs maintain that the statute fails to provide an ascertainable standard of conduct from which a reasonable person could determine the limits of acceptable behavior in situations where a worship service is being held, their argument overlooks the standards of appropriate and acceptable conduct, as established by society at large, for such assemblies.  The vagueness doctrine is premised on a rough idea of fairness, and requires consideration of "the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."  *Colten v. Commonwealth of Kentucky*, 407 U.S. 104, 110 (1972).  The Court finds Plaintiffs' argument that the statute fails to describe how to determine if an "inanimate object" is disturbed, interrupted, or disquieted to be meritless.  As the Supreme Court observed in *Grayned*, "It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.'" *Grayned*, 408 U.S. at 111, n. 15 (citation omitted).  The Court concludes that citizens wishing to obey the House of Worship Protection Act will be able to discern what conduct is proscribed.  Additionally, the statute's requirement that the thrust of the individual's conduct must be to

"intentionally and unreasonably" disturb the order and solemnity of the worship services relieves § 567.032 of the objection that it penalizes "without warning an offense of which the accused was unaware." *See Grayned*, 408 U.S. at 113-14; *Colten*, 407 U.S. at 110.

During oral argument, Plaintiffs contended that the term "intentionally" is "in fact vague," and inconsistent with Missouri's criminal mens rea statute, § 562.016.  They argued that the annotation to § 562.016 states that the statute previously had fifteen different terms for mens rea, including "intentionally, and was changed to omit those terms because they were vague and because different crimes had different definitions.  The Court presumes Plaintiffs are referring to the "Comment to 1973 Proposed Code."  However, a careful reading of this comment reveals that the paragraph merely states that § 562,016 "simplifies the number of terms used to describe the culpable mental states and provides definitions of them."  The comment then observes that "[p]resent Missouri statutes use a variety of terms to describe the necessary state[,]" and after listing fifteen such terms as examples, including the term "intentionally," the comment states merely: "While some of these terms have been defined by judicial decisions with regard to specific crimes, others are vague at best and the meaning of a given term, such as 'willful,' may vary from crime to crime."  The comment does not indicate that § 562.016 previously contained these terms, or that it was changed to omit "intentionally" or any of the other listed examples.  Rather, after stating that the terms used in the statute define the four basic culpable mental states, and cover nearly all the mental states that are needed, the comment says: "There may be a specific crime that will require its own peculiar mental element but these four cover nearly all, and perhaps all, of the variety of terms in the present statutes."  The Court finds Plaintiffs' vagueness argument regarding the term "intentionally" unpersuasive.  Criminal statutes long have required requirement of intent as an element of certain crimes, and have used various terms

21

to indicate particular mental states, and to draw distinctions between the required awareness.  *See State v. Koetting*, 616 S.W.2d 822, 825 (Mo. banc 1981).  "A distinction may be drawn between a requirement of knowledge and a requirement of intent as elements of a crime; to say that a person acted 'intentionally' means that he or she acted with a conscious objective to cause a result or to engage in the conduct described, while to say that he or she acted 'knowingly' means only that the person acted with an awareness of the nature or circumstances of his or her act."  21 Am. Jur.2d Criminal Law § 131.

Defendants contend that the applicability of the statute's regulation is dependent on whether an individual intends to engage in conduct that a person could reasonably assume would disrupt, disturb, interrupt, or disquiet a worship service.  They assert that the statute's language addresses speech, sound, or activity that could be perceived by individuals during their attendance in a worship service, maintaining that the statute's prohibition is not dependent on the content of the message uttered outside a house of worship, but the degree to which the act of delivering it intentionally disrupts the solemnity of the service.  This Court agrees.

What the statute prohibits is willful behavior intended to interfere with the successful conduct of a worship service.  The statute does not predicate culpability on the subjective reaction of the recipient of the speech, but instead utilizes a reasonable person standard to place the public and individuals such as Plaintiffs on notice of the level at which their conduct is penalized.  Again, the probability that a reasonable person would not understand any of the common terms used to describe the prohibited behavior is quite remote.  Notably, several state courts have upheld statutes with language similar to that contained in § 574.035 against vagueness challenges.  *See e.g., Hill v. State*, 381 So.2d 206 (Ala. Crim. App. 1979) ("Any person who wilfully interrupts or disturbs any assemblage of people met for religious worship, by

22

noise, profane discourse, rude or indecent behavior or any other act, at or near the place of worship . . ."); *People v. Cruz,* 101 Cal. Rptr. 711 (Cal. App. Dep't Super. Ct. 1972) (" . . . willfully disturbs or disquiets any assemblage of people met for religious worship, by profane discourse, rude or indecent behavior, or by any unnecessary noise, either within the place where such meeting is held, or so near it as to disturb the order and solemnity of the meeting . . .); *State v. Davis*, 257 N.E.2d 79 (Ohio Ct. App. 1969) (" . . . willfully interrupt or disturb a lawful assemblage of persons or a person while he is at or about the place where such assemblage is to be held, or is or has been held").  Furthermore, the language of § 574.035 is sufficient to put ordinary people on notice of the conduct it prohibits, and the statute's scienter requirement adequately addresses Plaintiffs' concern that protestors could unknowingly violate the statute in instances where parks, homes, public schools, community centers, or similar locations are used for religious purposes.  *See Grayned*, 408 U.S. at 113-14 (any vagueness of the statute's terms "noises" and "diversions" dispelled by its requirements that noise or diversion be actually incompatible with normal school activity, that there be a demonstrated causality between disruption and the noise or diversion, and that the acts be "willfully" done); *State v. Vaughn*, 366 S.W.3d 513, 521-22 (Mo. banc 2012) ( statute's specific intent requirement informs person of ordinary intelligence that his or her actions will result in criminal liability).  As well, the necessity of showing that the conduct was intended to disrupt a worship service would provide law enforcement officials with a guideline for its enforcement.  *See Grayned*, 408 U.S. at 114 (enforcement always requires exercise of some degree of police judgment, but ordinance requiring willful and demonstrated interference with school activities defined boundaries sufficiently distinct to give fair warning to citizens, policemen, juries, and appellate judges fair warning as to what is prohibited).

The Court notes that Plaintiffs' challenge to the statute's definition of "house of worship" as overbroad seems at odds with their contention that their purpose could only be addressed at the specific churches where an allegation of abuse has been made.  Targeting an audience at a particular place of worship necessarily implies knowledge of its use for religious worship, religious instruction, or other religious purpose.  However, the overbreadth doctrine enables plaintiffs to challenge a statute due to a judicial assumption that the statute's restrictions may cause others not before the court to refrain from constitutionally protected communication.  *Hill*, 530 U.S. at 731-32.  Where conduct and not merely speech is regulated, the challenged statute must be substantially overbroad, in an absolute sense, and relative to its legitimate sweep.  *United States v. Williams*, 553 U.S. 285,292 (2008).  Nevertheless, in its consideration and rejection of Plaintiffs' contention that protestors could unknowingly violate the statute in instances where parks, homes, public schools, community centers, or similar locations are used for religious purposes, the Court finds that the statute's requirement that the expressive conduct intentionally and unreasonably disrupt the solemnity of a worship service adequately addresses this concern as well.  The Court finds that the statute is not impermissibly vague or constitutionally overbroad.  The Court will deny Plaintiffs' Motion for Partial Judgment as to Count II, and will grant summary judgment to Defendants on Count II of Plaintiffs' Amended Complaint.

> 3.   Count III

Defendants also move the Court to grant summary judgment in their favor on Count III of Plaintiffs' Complaint.  In Count III, Plaintiffs claim that § 574.035 infringes on free speech rights guaranteed in the Constitution of the State of Missouri, and they request the Court to enter declaratory judgment pursuant to 42 U.S.C. § 1983, finding the House of Worship Protection Act

unconstitutional; issue preliminary and permanent injunctions enjoining enforcement of the statute; and award Plaintiffs costs, including reasonable attorney's fees.  For the reasons stated above, the Court finds that Plaintiffs are not entitled to their requested relief, and will grant summary judgment to Defendants on Count III of Plaintiff's Amended Complaint.

## V.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [ECF No. 43] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 46] is **GRANTED**.  Plaintiffs' Verified First Amended Complaint for Declaratory Judgment and Injunctive Relief Pursuant to 42 U.S.C. § 1983 is **DISMISSED with prejudice**.

Dated this  19th   day of April, 2013.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE